## HENRICH *v.* McCAULEY.

1. The court erred in charging the jury as follows: " If you find that any witness has been impeached by proof of contradictory statements, you should disregard that statement which is in conflict with the statement previously made, unless corroborated by other credible testimony, and the credit to be given the balance of the evidence would be for your determination."

2. The court erred in charging the jury, " that it [referring to the will] having been signed by her husband in the presence of three witnesses, and that will — so-called will — was entitled to probate in your county." From the language, " so-called will," used in this instruction, the jury might naturally draw the inference that the court believed the instrument propounded as the will of the deceased was not genuine, or that the court entertained doubts about its genuineness.

3. The court erred in admitting the evidence set out in the 3rd and 4th special grounds of the motion for new trial, over the timely objections of the propounder that the same was irrelevant and immaterial.

No. 3252. JANUARY 25, 1923.

Appeal. Before Judge Shurley. Lincoln superior court. April 6, 1922.

This was a proceeding in the court of ordinary of Lincoln County, brought by Martha J. Henrich to probate the will of Carl Henrich, deceased. Ruby McCauley filed a caveat to the probate, on the ground that the propounded instrument was a forgery. On appeal in the superior court, the jury, on the first trial of this issue, found in favor of the caveatrix. Propounder made a motion for new trial, which was overruled and she excepted, bringing the case to this court. The judgment overruling the motion was reversed by this court. *Henrich* v. *McCauley,* 151 *Ga.* 138 (106 S. E. 94). On the last trial the jury again found in favor of the caveatrix; and the propounder made another motion for new trial. The original motion for new trial consisted of the formal grounds. By an amendment the propounder added the following grounds:

(1) The court erred in charging the jury as follows: " I charge you, gentlemen, that if there has been any attempt to impeach any witness by proof of contradictory statements previously made, you may determine from the evidence, first, as to whether such statements have been made; secondly, whether it was a contradictory statement to that which has been made by the witness on the stand; and thirdly, whether it was material to the evidence and to the case. If you find that any witness has been impeached by proof of contradictory statements, you should disregard that statement which is in conflict with the statement previously made, unless corroborated by other credible testimony, and the credit to be given the balance of the evidence would be for your determination." Movant assigns error especially upon the latter sentence of the charge just quoted, on the ground that it was an erroneous statement of the law, and prejudicial to movant, since the caveatrix on

the trial had attempted to impeach a material witness for the propounder, by proof of contradictory statements.

(2) The court erred in charging the jury, "that it [referring to the will] having been signed by her husband in the presence of three witnesses, and that will — so called will — was entitled to probate in your county." Movant assigns error upon the use of the words, "so-called will," because this was an expression of opinion and tended to convey to the mind of the jury an impression upon the part of the court that the will was not genuine.

(3) The court erred in admitting, over the objection of propounder, the following testimony of R. E. Lee: "As a matter of fact I sold Mr. Norman a thousand dollars worth of it [referring to stock in Georgia Copper Company]. I got nine hundred dollars of his money for it. Mr. Claud Norman was a stockholder in that mine. I don't know whether he is now. I don't know what he thought about the stock. I don't think that mine is in operation. I think the same kind of mineral is in there as when I sold Mr. Norman his stock, and I think the company could be made a good company; but the conditions have changed. I think the mine is good. We had one man make a good report on the mine. I think that mine produces either four or five minerals. According to Mr. Henrich's survey of that mine, there are six official veins of ore in it. Those veins run in different ways. They are cut off by a dyke rock. Experts didn't know but that those veins would run together in that mine. I don't think I ever expressed an opinion as to what would happen over there when those veins run together. There were six veins. Claud Norman told me that the reason he bought was that Professor Buchanan and me had charge of the mines down there, and he thought we were going to make something out of it. Mr. Buchanan was the real boss down there at that time. We got this money from different places. I didn't sell Mr. Pruitt any stock." The objection presented at the trial when this testimony was offered was that it was irrelevant and immaterial, tended to confuse the jury and to obscure the issues in the case, and shed no light on the real issue involved.

(4) The court erred in admitting, over timely objection by propounder that it was irrelevant and immaterial, the testimony of Z. J. Ray, a witness sworn for the caveatrix. This witness testified: he lived at the Georgia Copper Mines in Lincoln County,

and was local manager there; he had been engaged in the mining trade 20-odd years, and had mastered the mining business pretty thoroughly. The physical condition of the McGruder mine is very good; that mine produces copper, gold, and lead ores, and some pyrites, at one operation in the same ore. A conservative estimate of the ore in sight in the mine would be at least $100,000, according to the assays and measurements of the tonnage now blocked out. There is some scattered ore besides that which was left in pillars to keep the mine from scattering. The mine so far is in its infancy; the probabilities being that there is no way of correctly estimating the value of what might open up, but everything points to a better future. We had an injunction served on Mr. Whitaker, as president of the company, by some of the stockholders, that caused us to close down. There is a fight and contest among stockholders over this mine right now, and that's the reason it is shut up. There are a bunch of petitioners in this suit — Carl Zerbes, Henrich, Crook, Buchanan, Mrs. Henrich, etc. Carl Henrich had one tenth of the stock in the mine when he died — 100,000 shares. I never witnessed any papers transferred from Mrs. Martha Henrich to Louis Enricht.— This witness, on direct and cross-examination, went into great detail touching the history of this mine, its financial and litigation troubles, its future outlook, price of copper, non-payment of taxes for last year, advertisement of its property for taxes, amount due laborers, number of men employed, shipment of ore, and the net return per car thereof. He denied that he had sworn " that the stuff cost more than it brought."

Before the first trial of this case, two different sets of depositions of Louis Enricht were sued out. On the first trial he was sworn in person. His testimony was stenographically reported, and afterwards embraced in the brief of the evidence when the case was first brought to this court. On the last trial he was not sworn in person, but his depositions were introduced by the propounder. It seems that his testimony on the first trial, when he appeared as a witness for the propounder, was introduced for the purpose of impeaching him by contradictory statements. The real ground of caveat relied upon by the caveatrix was that the instrument propounded as the last will of Carl Henrich was a forgery. On this issue there was evidence to authorize the jury to find either way.

*Colley & Colley,* and *Norman & Norman,* for plaintiff.

*Clement E. Sutton* and *Alvin G. Golucke,* for defendant.

HINES, J.: (After stating the foregoing facts.)

1. The propounder complains of the charge on the subject of impeachment of witnesses, which is contained in the first ground of the amendment to her motion for new trial, and is set out in full in the statement of facts. On the subject of the impeachment of witnesses, the court instructed the jury as follows: "If you find that any witness has been impeached by proof of contradictory statements, you should disregard that statement which is in conflict with the statement previously made, unless corroborated by other credible testimony, and the credit to be given the balance of the evidence would be for your determination." The ground of exception to this instruction is that it is an erroneous statement of the law and prejudicial to the movant. Similar instructions have been condemned by this court, and new trials have been granted on account thereof. *Waycaster* v. *State,* 136 *Ga.* 102 (70 S. E. 883); *Purvis* v. *Atlanta Northern Ry. Co.,* 136 *Ga.* 852 (72 S. E. 343); *Ga. Ry. & El. Co.* v. *Cocke,* 137 *Ga.* 720 (74 S. E. 244). In the *Purvis* case this court, in dealing with a similar charge and speaking through Justice Beck, said: "The instruction contained in this portion of the charge was confusing; and if it be construed, as it very probably was construed, by the jury, as requiring them. to find that as between sworn testimony and previous contradictory statements the sworn testimony was false and therefore to be rejected, the rule submitted for the guidance of the jury was not sound." In *Ga. Ry. & El. Co.* v. *Cocke,* supra, this court again quoted approvingly the above language, and the principle ruled in the case in which the above language was used, and granted a new trial because of such erroneous instruction.

But it is insisted by counsel for the caveatrix, that the principle ruled in the cited cases is not applicable to the instant case, because in these cases the conflict was between unsworn statements not made in court, and sworn statements made in court; but in the case at bar the conflict is between sworn statements contained in two sets of depositions of the witness, taken out before the first trial of this case, and statements made by the witness when sworn and examined in person in behalf of the propounder on said trial. In other words, the contention is that the principle of the cited

cases does not apply when it is sought to impeach the witness by contradictory sworn statements. The learned counsel for the caveatrix does not cite any authority to sustain this contention. Diligent search on our part fails to disclose such authority. This contention does not seem to us to rest upon sound logic and reason. When a previous sworn statement, contradicted by a later sworn statement, is introduced to impeach a witness, does the law demand that the jury shall reject and disregard the last statement? We think not. In the one case as in the other, the credibility of the witness is to be determined by the jury; and the court erred in instructing the jury that, if they found any witness had been impeached by proof of contradictory statements, they should disregard that statement which is in conflict with the statement previously made, unless corroborated by other credible testimony.

While we are loath to set aside a second verdict in favor of the caveatrix, this erroneous instruction is of such pith and moment as to require the grant of another trial of this cause. The witness whom it was sought to impeach was the only witness to the document propounded as a will whose testimony was before the jury; one of the witnesses thereto being dead, and the third being inaccessible. So the vital importance of this witness to the propounder becomes apparent. Such erroneous instruction by the court to the jury for their guidance in handling the testimony of this witness was harmful to the propounder.

2. The court charged the jury "that it [referring to the will] having been signed by her husband in the presence of three witnesses, and that will — so-called will — was entitled to probate in your county." The error alleged is that the use of the language, "so-called will," by the court tended to convey to the mind of the jury the impression that the instrument offered for probate was not genuine. The inference which the jury might naturally draw from this language was that the court believed that the instrument propounded as the will of the deceased was not genuine, but only a so-called will, or doubted its genuineness; and the use of such language was therefore improper. *Davis* v. *State, 57 Ga.* 66. So we are of the opinion, that, as the main ground upon which the caveatrix relied to defeat the probate of the propounded instrument was that it was a forgery, this language tended to prejudice the case of the propounder in the eyes of the jury.

3. In the third and fourth special grounds of the motion for new trial error is assigned upon the admission by the court of certain testimony of two witnesses, over timely objection that such testimony was irrelevant. The nature of this evidence is set out in the statement of facts. We fail to see the relevancy of this evidence; and it was error to admit the same.

*Judgment reversed. All the Justices concur.*

RUSSELL, C. J. I fully agree with the rulings in the first and second headnotes, and consequently concur in the result reached. However, it is not plain to me that the court erred in admitting the evidence of which complaint is made in the third and fourth grounds of the amended motion for new trial.